FILED
JUN 30 2016
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____ DEPUTY

IN THE UNITED STATES DISTRICT
COURT FOR THE WESTERN DISTRICT
OF TEXAS SAN ANTONIO DIVISION

| | |
|---|---|
| MARITZA AMADOR, INDIVIDUALLY AND AS REPRESENTATIVE OF THE ESTATE OF GILBERT FLORES AND AS NEXT FRIEND OF MINOR R.M.F., VANESSA FLORES, MARISELA FLORES, CARMEN FLORES AND ROGELIO FLORES,<br>　　　　Plaintiffs<br><br>v.<br><br>BEXAR COUNTY, BEXAR COUNTY SHERIFF'S OFFICE, GREGORY VASQUEZ, Individually and in his Official Capacity and ROBERT SANCHEZ, Individually and in his Official Capacity,<br>　　　　Defendants. | § § § § § § § § § § § § § § § § § § § CIVIL ACTION NO. 5:15-CV-00810-RP<br><br><br><br><br>JURY DEMANDED |

## PLAINTIFFS' FIRST AMENDED ORIGINAL COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

NOW COME Plaintiffs, Maritza Amador, *Individually and as Representative of the Estate of Gilbert Flores and as Next Friend of Minor R.M.F.*, Vanessa Flores, Marisela Flores, Carmen Flores and Rogelio Flores, and present this their *Plaintiffs' First Amended Original Complaint*, bringing this action against Bexar County, Texas, the Bexar County Sheriff's Office by and through Bexar County, Gregory Vasquez, *Individually and in his Official Capacity*, and Robert Sanchez, *Individually and in his Official Capacity*, complaining that said Defendants, jointly and severally, have denied Plaintiffs their rights as guaranteed by the

1

Constitution and laws of the United States of America and the State of Texas, and in support thereof would respectfully show the following:

## I.
## JURISDICTION AND VENUE

1. This action is brought pursuant to 42 U.S.C. § 1983 and this court has jurisdiction pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343(3) (civil rights). Venue is proper in the Western District of Texas, San Antonio Division, as this is the district where the claim arose in accordance with 29 U.S.C. § 1391(b). Plaintiffs bring this action as the surviving family and as the only persons entitled to recover damages arising from decedent's wrongful death pursuant to TEX. CIV. PRAC. & REM. CODE §§ 71.000 et seq. and as applied through 42 U.S.C. § 1983.

## II.
## PARTIES

2. Before being shot and killed on August 28, 2015, Gilbert Flores was a citizen of the United States and resided in San Antonio, Bexar County, Texas.

3. Plaintiff Maritza Amador was the wife of Gilbert Flores and the mother of Gilbert Flores' minor child, R.M.F. Both are residents of San Antonio, Bexar County, Texas.

4. Plaintiff Vanessa Flores is the child of Gilbert Flores and a resident of San Antonio, Bexar County, Texas.

5. Plaintiff Marisela Flores is the child of Gilbert Flores and a resident of San Antonio, Bexar County, Texas.

6. Plaintiff Carmen Flores is the mother of Gilbert Flores and a resident of San Antonio, Bexar County, Texas.

7. Plaintiff Rogelio Flores is the father of Gilbert Flores and a resident of San Antonio, Bexar County, Texas.

8. Defendant Bexar County, Texas, (hereinafter "Bexar County"), is a political subdivision of the State of Texas and Defendant Bexar County, Texas, (hereinafter "Bexar County"), is a political subdivision of the State of Texas and has been served and responded herein and no further service is necessary.

9. Defendant, the Bexar County Sheriff's Office is an agency within Bexar County and not a separate political entity and as such it is named herein but is not a separate party.

10. Defendant Gregory Vasquez, (hereinafter "Defendant Vasquez") was at all times material to this suit, an officer employed by the Bexar County Sheriff's Office. Each of the acts complained of herein arise from the conduct of Defendant while acting under color of state law and was committed within the scope of his employment and authority with the Bexar County Sheriff's Office. Defendant has been served and has answered herein. No further service is necessary.

11. Defendant Robert Sanchez, (hereinafter "Defendant Sanchez") was at all times material to this suit, an officer employed by the Bexar County Sheriff's Office. Each of the acts complained of herein arise from the conduct of Defendant while acting under color of state law and was committed within the scope of his employment and authority with the Bexar County Sheriff's Office. Defendant has been served and has answered herein. No further service is necessary.

12. All of the Plaintiffs are statutory beneficiaries for the wrongful death of Gilbert Flores.

## III.
## STATEMENT OF FACTS

13. On August 28, 2015, the decedent, Gilbert Flores, was at the residence located at 24414 Walnut Pass in San Antonio, Bexar County, Texas. There was a domestic disturbance at the residence and a call to 911 for assistance was made.

14. Defendants Vasquez and Sanchez were dispatched to the residence located at 24414 Walnut Pass where they encountered the decedent. Defendant Vasquez was the first to arrive at the scene and went to the front door of the residence. Prior to arriving, both officers had been told by Sheriff's dispatch that Mr. Flores was upset and had indicated that he wanted to commit "suicide by cop". Despite this knowledge, the deputies failed to initially call for a negotiator and instead confronted Mr. Flores.

15. Gilbert Flores engaged the deputies in the front yard of the residence. There was an initial altercation between Mr. Flores and Deputy Vasquez. Thereafter, Deputy Sanchez arrived on the scene.

16. During the altercation, the deputies reported that Mr. Flores was going back into the house. A supervisor from the department, who was not at the scene, gave them the instruction to not allow that to happen and to do what it took to keep him from going into the house. At that point, Deputy Sanchez fired a shot at Mr. Flores but missed.

17. Mr. Flores came back out of the house and had further engagement with the officers. The deputies continued to engage Mr. Flores instead of waiting for the negotiators or other back up to arrive.

18. Ultimately, the deputies radioed that Mr. Flores was attempting to enter Deputy Vasquez' patrol car. A supervisor not at the scene radioed to "stop him, by all means stop

4

him". This was the second time a supervisor gave instructions for the use of deadly force based upon limited information relayed to him from the officers on the scene.

19. Finally, Mr. Flores, still in the front yard, gave up all resistance and proceeded to place both of his hands above his head, surrendering to the will of the deputies. Mr. Flores' actions in surrendering with his hands raised reflected that there was no immediate danger of bodily injury to the officers or others. This act of surrender and contrition showed that any such threat had passed.

20. Although Mr. Flores posed no threat to the deputies or others, Defendants Vasquez and Sanchez fired two shots at the decedent, executing him on the front lawn of his parents' home. This shooting took place while Mr. Flores was more than twenty feet away from the officers, was standing still, was not advancing towards the officers and had both of his hands raised above his head.

21. Mr. Flores immediately fell to the ground. The officers provided no medical attention to Mr. Flores and instead allowed him to lay on the lawn, dying, without assistance. He was ultimately taken to University Hospital where he was pronounced dead from gunshot wounds.

22. In committing said acts and/or omissions, each Defendant was in the course and scope of their employment with the Bexar County Sheriff's Office and each Defendant was acting under color of state law.

23. The Defendant officers' acts amount to an excessive and/or unnecessary use of force. Said excessive/unnecessary use of force was objectively unreasonable, as no reasonable police officer and/or law enforcement officer given the same or similar circumstances would have initiated such a vicious and unwarranted attack on Mr. Flores. Neither officer nor any third party was under an immediate threat of harm from Mr. Flores at the time he was shot and

killed and there was no reasonable basis to believe that either the officers or any third party was under the threat of immediate harm which would justify the use of deadly force.

24.     Despite the lack of a reasonable and objective threat of harm which would justify the use of deadly force, a subsequent investigation conducted by the department found that the actions of the officers were in keeping with the policies of the Bexar County Sheriff's Department.

25.     Further, the investigation reveals that both Deputy Vasquez and Deputy Sanchez provided statements to the deputies investigating this shooting. These statements were given during the course of a criminal investigation and were sworn to be the truth. Officer Vasquez' statement contains the following affirmation:

> "I state that I have read this entire statement and I swear and affirm it is true and correct. I have not been promised anything nor threatened by anyone for this statement. I have given it to investigator J. Mahon #605 of my own free will. I will appear in court if necessary to testify and I will notify investigator J. Mahon #605 of any change in my address or phone. I also understand that if I knowingly made any false statements, charges may be filed against me for perjury."

The statement of Deputy Sanchez has the following affirmation:

> "I state that I have read this entire statement and declare that it is true and correct to the best of my knowledge and recall. I have not been promised anything nor threatened by anyone for this statement and have given it to Detective John Perez of my own free will. I will appear in court if necessary to testify and will notify Detective John Perez of any change in my address"

26.     These statements were provided by these deputies prior to Deputy Vasquez or Sanchez gaining knowledge that the incident, including the shooting had been videotaped by two separate individuals.

27. Both Deputy Vasquez and Deputy Sanchez lied in their statements in an effort to justify the shooting. As an example, Deputy Vasquez stated that at the time of the time he pulled the trigger Mr. Flores was 6 to 8 feet away from him and advancing towards him. The video shows this is a fabrication intended to show that Mr. Flores posed a threat at the time of the shooting. Additionally, a schematic done by the Bexar County Sheriff's Office shows the true distance Mr. Flores was from the officers at the time of the shooting. Mr. Flores was in excess of twenty (20) feet. (*See* attached Exhibit B).

28. Giving these false statements by the deputies is a violation of the following Texas Penal Code section:

> Sec. 37.08. FALSE REPORT TO PEACE OFFICER, FEDERAL SPECIAL INVESTIGATOR, OR LAW ENFORCEMENT EMPLOYEE. (a) A person commits an offense if, with intent to deceive, he knowingly makes a false statement that is material to a criminal investigation and makes the statement to:
>
> (1) a peace officer or federal special investigator conducting the investigation; or
> (2) any employee of a law enforcement agency that is authorized by the agency to conduct the investigation and that the actor knows is conducting the investigation.
>    (b) In this section, "law enforcement agency" has the meaning assigned by Article 59.01, Code of Criminal Procedure.
>    (c) An offense under this section is a Class B misdemeanor.

Additionally, the actions of these deputies in giving these false statements is perjury as described:

> Sec. 37.02. PERJURY. (a) A person commits an offense if, with intent to deceive and with knowledge of the statement's meaning:
> (1) he makes a false statement under oath or swears to the truth of a false statement previously made and the statement is required or authorized by law to be made under oath; or

> (2) he makes a false unsworn declaration under Chapter 132, Civil Practice and Remedies Code.
>
> (b) An offense under this section is a Class A misdemeanor.

29. Despite having video evidence that these deputies shot and killed Mr. Flores while he was standing still, surrendering with his hands raised and despite video evidence confirming that these deputies lied in their statements given during the course of the investigation, the Sheriff's department found no violation of policy. The deputies Vasquez and Snchez suffered no disciplinary action.

30. The actions of Defendants Vasquez and Sanchez were the result of inadequate training, a failure of department oversight and the result of an atmosphere based upon policy, custom and practice that teaches these officers that the use of deadly force by a Sheriff's deputy will not result in disciplinary action or criminal prosecution.

31. The actions of the Defendants Vasquez and Sanchez have been reviewed by a competent law enforcement expert who opined that their actions were unnecessary, unreasonable and there was no probable cause to use deadly force. Specifically, Dr. Philip Hayden, a supervisory Special Agent for the FBI for over fifteen years who trained agents as a tactical instructor and who has written FBI instruction manuals for the FBI, including the FBI deadly force policy, has determined after his review of the video showing the shooting of Mr. Flores and other available information that:

> When Mr. Flores raised his hands, he was not an immediate threat to the officers. Both officers were standing a safe distance from Mr. Flores and had limited cover. In reviewing this video Mr. Flores did not appear to make any threatening movement towards the officers prior to them shooting. If Mr. Flores had a knife in his left hand this would not change my opinion. It is my opinion, which I hold to a reasonable degree of professional certainty, that in order for Mr. Flores to be an immediate threat he would have had to make some sort of an assertive movement that would cause the officers to believe they were going to be attacked and their

lives were in danger. This did not appear to happen. Therefore the shooting was unnecessary and unreasonable and there was no probable cause to use deadly force.

See Exhibit A to the complaint.

32. The Bexar County Sheriff's Department policy and procedure manual gives vague and conflicting instructions to officers on when and under what circumstances force can be used. These conflicting policies ultimately allow officers to determine if deadly force is required based upon their individual judgment without specific guidelines. For example, section 9.02B states,

> In each instance of the use of force, the officer should exhaust every reasonable means of employing the minimum amount of force to effect the objective before escalating to the next, more forceful method. **However, an officer is not required to engage in prolong combat or struggle rather than resorting to that method which will most quickly and safely bring the situation under control.**
> (emphasis added)

This policy allows for an officer to skip the increasingly forceful methods to subdue a suspect and determine in his own judgment the quickest method to bring a situation under control, even if that method would be deadly force against a suspect.

33. In addition, the policy manual outlines a continuum of force up to and including deadly force and then states that this continuum is not absolute and can be ignored at the officer's discretion. Section 9.01F states

> Where possible, an officer **will use verbal persuasion first, followed thereafter in ascending order, by:**
>
> 1. Physical strength and skill, ranging from restraint and come along holds to hand or foot strikes;
>
> 2. Approved ASP baton used in the prescribed manner, chemical agents, Electronic Control Device (ECD)/ Electronic Control Weapon (ECW);and

9

   3. Approved firearm. **Deputies must bear in mind that the order of this continuum of force is not absolute, and the situation may require immediate use of a higher level of force.**

(Emphasis added)

34. In addition, the policy outlines the standard objective test necessary for the use of force, including deadly force and then allows an officer to abandon that objective assessment and base his actions entirely upon his subjective analysis. This policy allows an officer to use the degree of force he deems necessary based upon a subjective belief of feeling threatened.

35. Further, the department found no violation of policy when supervisors not on the scene and not making their own assessment of the situation gave instructions to the deputies for the use of deadly force. This remote authorization for the use of deadly force is apparently in keeping with the department's policy.

36. These policies, among others, led to the shooting of Mr. Flores at a time when he had surrendered and there was no immediate threat to the lives of the officers in violation of his constitutional rights.

## IV.
## CLAIMS FOR RELIEF

### COUNT I
### 42 U.S.C.S. § 1983

37. The allegations contained in Paragraphs 13 through 36 are herein incorporated by reference, the same as if fully set forth verbatim for any and all purposes of this pleading.

38. The Civil Rights Act of 1871, now codified as 42 U.S.C.S. § 1983 as federal law, provides: "Every person who, under color of any statute, ordinance, regulation, custom or usage, of any state or territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of

any laws, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." 42 U.S.C.S. § 1983.

39. The state action requirement for standing under 42 U.S.C.S. § 1983 has more commonly been referred to as "color of state law," from the statute itself. When committing said acts and/or omissions, Defendants Vasquez and Sanchez were acting under color of state law within their employment with the Bexar County Sheriff's Office.

40. Defendants, acting under color of state law, violated decedent Gilbert Flores' Fourth Amendment rights. The rights, privileges, and immunities secured by the Fourth Amendment of the Constitution, and incorporated and applied to the states through the Fourteenth Amendment, include the right to be free from an unreasonable seizure. These rights were violated when Defendants Vasquez and Sanchez intentionally shot and killed Gilbert Flores.

41. The deadly force used by Defendants Vasquez and Sanchez against the decedent was unjustified and objectively unreasonable under any circumstances. This force was clearly excessive to the need, and this excessiveness was objectively unreasonable in light of the facts and circumstances at the time of the shooting.

42. Defendants' actions constitute excessive force in violation of the Fourth Amendment of the United States Constitution as decedent, Gilbert Flores, posed no immediate threat of serious danger to Defendant Sanchez, Defendant Vasquez or any other person at the time the Defendants shot and killed the decedent.

43. The Defendants' use of excessive force in violation of Mr. Flores' Fourth Amendment rights directly and proximately caused decedent Gilbert Flores' death and the Plaintiffs' damages.

11

## COUNT II
### Official Policies and Customs of Bexar County and the Bexar County Sheriff's Office

44.  The allegations contained in Paragraphs 13 through 36 are herein incorporated by reference, the same as if fully set forth verbatim for any and all purposes of this pleading.

45.  Defendants Bexar County and the Bexar County Sheriff's Office are liable under 42 U.S.C.S. § 1983 due to one or more official policies or customs of Defendant Bexar County and Defendant Bexar County Sherriff's Office that deprived Gilbert Flores of his constitutional rights.

46.  It is well-established that municipalities are liable under 42 U.S.C.S. § 1983 for constitutional torts that are the result of compliance with the municipality's customs, practices, policies or procedures. A municipality is liable for constitutional deprivations which arise pursuant to governmental custom even though such custom has not received formal approval through the body's official decision making channels.

47.  Defendants Bexar County and the Bexar County Sheriff's Office are liable under 42 U.S.C.S. § 1983 due to the following:

   1) the inadequacy of their policies, training and supervision relating to the use of deadly force;

   2) the inadequacy of their policies, training and supervision relating to the use of non-lethal control devices and tactics;

   3) the adoption of a completely subjective continuum of force policy that can be expressly avoided and which leaves the use of deadly force exclusively to the unchecked discretion of officers on the scene;

   4) the adoption of a policy that allows an officer to use the degree of force that he feels brings the situation quickly under control even if that method is deadly force;

5)     the adoption of a policy that allows for the officers to use deadly force not based upon an objective threat of immediate bodily harm but instead upon a subjective belief of harm;

6)     the adoption of a policy that allows for remote supervisors to give authorization for the use of deadly force based upon limited and subjective information relayed to them by officers on the scene instead of on their own assessment of all of the facts and

7)     the adoption of a policy that in the absence of a complaint being filed raising specific allegations against deputies, there is no further investigation conducted following the use of force other than the filing of reports by the officers involved and those that witnessed the event.

8)     the adoption of a policy that delegates the enforcement of use of force policies through a criminal review by the District Attorney's office to determine if disciplinary action should be taken against officers using deadly force

48.     The official policies and/or customs of Bexar County and the Bexar County Sheriff's Office complained of herein were a direct cause in fact and proximate cause of the decedent's deprivation of constitutional rights, as well as his death and other injuries and damages which were sustained.

49.     All of these policies and procedures were made by those with final policy making authority or were condoned as the custom and practices of the department by those in authority.

50.     These policies and customs reflect a deliberate indifference to the risk that members of the public will be subjected to constitutional violations, including the use of excessive force, in violation of their Fourth Amendment rights. These policies and/or customs create a significant risk that members of the public will suffer severe personal injuries and/or death, at the hands of those that are employed to protect them.

## V.
## DAMAGES

51.  The allegations contained in Paragraphs 13 through 20 are herein incorporated by reference, the same as if fully set forth verbatim for any and all purposes of this pleading.

52.  Plaintiffs are the only heirs at law to the Estate of Gilbert Flores and therefore bring this suit for damages suffered and sustained by the decedent, Gilbert Flores, pursuant to Sections 71.002 et seq. and 71.021 et seq. of the Texas Civil Practice and Remedies Code.

53.  Plaintiffs seek damages for the following:

1)  conscious pain, suffering and mental anguish that decedent suffered prior to his death;

2)  reasonable and necessary medical expenses incurred as a result of Gilbert Flores' injuries leading to his wrongful death;

3)  reasonable and necessary funeral and burial expenses incurred as a result of Gilbert Flores' wrongful death;

4)  the past and future loss of support arising from the death of Gilbert Flores;

5)  loss of consortium;

6)  loss of inheritance;

7)  severe mental anguish that each Plaintiff has suffered and will, in reasonable probability, continue to suffer in the future; and

8)  the past and future loss of companionship and society arising from the death of Gilbert Flores.

54.  In addition, Plaintiffs pray for punitive damages against all individual Defendants. Punitive damages are designed to punish and deter persons such as Defendants who have engaged in egregious wrongdoing. Punitive damages may be assessed under § 1983 when a Defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally-protected rights of others. While municipal

defendants are absolutely immune from § 1983 awards of punitive damages, such damages may be awarded against a public employee or official in their individual capacity. Therefore, Plaintiffs allege and pray for punitive damages against all individual Defendants, as such Defendants actually knew that their conduct was unconstitutional, and/or was callously indifferent to its legality.

55. Plaintiffs seek recovery for these damages within the jurisdictional limits of this Court.

## VI.
## ATTORNEYS FEES

56. Pursuant to the Civil Rights Attorney's Fees Award Act, 42 U.S.C.S. § 1988, a prevailing party in a § 1983 case is entitled to recover his or her attorney's fees. Hence, Plaintiffs further pray for all costs and attorney fees associated with bringing the present case to trial.

## VII.
## DEMAND FOR JURY TRIAL

57. Plaintiffs hereby make their demand for a jury trial and acknowledges herein the payment on this date of the required jury fee.

## VIII.
## PRAYER

WHEREFORE, premises considered, the Plaintiffs hereby request and pray that the Defendants be cited to appear and answer herein and that upon final hearing the Plaintiffs have and recover from the Defendants their actual damages, exemplary damages, attorney's fees, prejudgment and post judgment interest as allowed by law, court costs and other and further relief to which the Plaintiffs may show themselves to be justly entitled.

LAW OFFICES OF THOMAS J. HENRY
521 Starr Street
Corpus Christi, Texas 78401
Phone: (361)-985-0600
Fax: (361)-985-0601

By: _____
    Thomas J. Henry
    SBN: 09484210
    Robert P. Wilson
    SBN: 21718575
Tjh-svc@thomasjhenrylaw.com
Rwilson-svc@thomasjhenrylaw.com
ATTORNEYS FOR PLAINTIFFS
*service by email to these addresses only

## CERTIFICATE OF SERVICE

I do hereby certify on the ___ day of June, 2016, I electronically filed the foregoing with the Clerk of the Court using the CM-ECF system which will send notification of such filing to the following:

Nicolas "Nico" LaHood
Leslie "Les" Sachanowicz
Susan A. Bowen
Jacquelyn M. Christilles
Bexar County District Attorney's Office
101 W. Nueva – Civil Division
San Antonio, Texas 78205

Charles S. Frigerio
Law Offices of Charles S. Frigerio
111 Soledad, Suite 840
San Antonio, Texas 78205

_____
Robert P. Wilson

