IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **MARITZA AMADOR, ET AL.** | § | |
| | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. |
| | § | 5:15-cv-00810-RP |
| **BEXAR COUNTY, ET AL.** | § | |

**MOTION FOR SUMMARY JUDGMENT AND SUPPORTING BRIEF
OF
DEFENDANTS BEXAR COUNTY, TEXAS, BEXAR COUNTY
SHERIFF'S OFFICE GREGORY VASQUEZ AND ROBERT SANCHEZ,
IN THEIR OFFICIAL CAPACITY**

TO THE HONORABLE UNITED STATES DISTRICT COURT:

Defendants Bexar County, Texas, Bexar County Sheriff's Office, Gregory Vasquez and Robert Sanchez, in their official capacity only, move this court to enter an order granting judgment in their favor. In support of this motion, they would show the Court as follows:

**I.**

**Undisputed Facts**[1]

1. On August 28, 2015, the decedent, Gilbert Flores ("Flores"), was at his residence located at 24414 Walnut Pass in San Antonio, Bexar County, Texas when a domestic disturbance ensued. Flores' mother, Plaintiff Carmen Flores, made a 911 call requesting assistance. The Bexar County Sheriff's Office dispatcher answered the call and sent Defendants Deputies Gregory Vasquez ("Vasquez") and Robert Sanchez ("Sanchez") to the residence. The dispatcher informed Deputies Vasquez and Sanchez that Flores was upset

---

[1] The facts are taken from the following exhibits filed in support of Gregory Vasquez and Robert Sanchez' Motion for Summary Judgment: Exhibits A through J; and from Bexar County "Exhibit Q." All exhibits are incorporated here by reference.

and had stated that he wanted to commit "suicide by cop."

2. When Vasquez arrived, he confronted Flores at the doorway of the residence. Vasquez was carrying a ballistic shield for protection. Flores was armed with a knife. Flores refused to drop the knife and Vasquez retreated to the street. Sanchez then arrived. An altercation took place between Flores and the Deputies on the street. During the altercation, Flores ran toward the deputies. Sanchez fired one shot that missed Flores. In defiance of the Deputies show of force, Flores refused several times to drop the knife. Flores went back to the residence and retrieved two metal chairs. Flores then attacked Vasquez with the knife while holding a chair. Vasquez discharged his Taser and was able to strike only the chair. Flores then struck Vasquez several times with the knife. Vasquez used the shield to protect himself from the attack but dropped his Taser when Flores struck him in the arm. Flores went back to the front porch of his house.[2] Flores then walked to street holding the two metal chairs. He picked up the Taser and attempted to fire it. He was not successful and threw the Taser toward a grassy area across the street.

3. The confrontation continued. Flores refused to drop the knife and opened the door of a marked police vehicle that was parked on the street. He then walked toward the Deputies while retrieving the knife he was carrying in the waist of his pants. Armed with the knife, he stopped and raised his arms holding the knife in his left hand. Vasquez and Sanchez fired one shot each striking Flores. Flores died as a result of the gunshot wounds.

---

[2] Around this time, neighbor started recording the altercation with a phone camera. See Exhibit A.

## II.

## The Litigation

4. The Plaintiffs filed this suit under 42 U.S.C. § 1983 claiming that Deputies Vasquez and Sanchez used excessive force against Flores. The Plaintiffs sued Deputies Vasquez and Sanchez, Bexar County and the Bexar County Sheriff's Office. The sole claim is that the shooting death of Flores was unreasonable in violation of the Fourth Amendment to the United States Constitution.

5. On this date, Deputies Vasquez and Sanchez have filed a Motion for Summary Judgment. Their Motion and Exhibits are incorporated into Bexar County's Motion for Summary Judgment by reference. The Bexar County Defendants incorporate into their Motion for Summary Judgment for all purposes the following exhibits:

- a. "Exhibits A through J" which are exhibits attached to Gregory Vasquez and Robert Sanchez' Motion for Summary Judgment;
- b. "Exhibit K" which are copies of Gregory Vasquez and Robert Sanchez' TCOLE training transcripts;
- c. "Exhibit L" which is an excerpt of the Bexar County Sheriff's Manual;
- d. "Exhibit M" is Deputy Vasquez' deposition excerpt;
- e. "Exhibit N" is Deputy Sanchez' deposition excerpt;
- f. "Exhibit O" is Sgt. Pedraza's deposition excerpt;
- g. "Exhibit P" is Lt. Muldau's deposition excerpt;
- h. "Exhibit Q" Summary of the administrative investigation.

## III.
## Summary Judgment.

6. Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). *See Celotex v. Catrett*, 477 U.S. 317, 322-325, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

7. In their First Amended Original Complaint, Plaintiffs claim that Bexar County and the Bexar County Sheriff's Office are liable for Flores' death. In support, Plaintiffs make references to the following alleged policies related to training and supervision: (1) the inadequacy of their policies, training and supervision relating to the use of deadly force; (2) the inadequacy of their policies, training and supervision relating to the use of non-lethal control devices and tactics; (3) the adoption of a policy that allows for remote supervisors to give authorization for the use of deadly force based upon limited and subjective information relayed to them by officers on the scene instead of on their own assessment of all of the facts. First Amended Original Complaint at pp. 12-13.

8. A second aspect of Plaintiffs' liability claims against the Defendants relates to the adoption of alleged use of force policies contained in the Sheriff's Office policy manual: "(1) the adoption of a completely subjective continuum of force policy that can be expressly avoided and which leaves the use of deadly force exclusively to the unchecked discretion of officers on the scene; (2) the adoption of a policy that allows an officer to use the degree of

force that he feels brings the situation quickly under control even if that method is deadly force; (3) the adoption of a policy that allows for the officers to use deadly force not based upon an objective threat of immediate bodily harm but instead upon a subjective belief of harm." *Id.*

9.     Finally, the Plaintiffs claim that the death of Decedent Flores is attributable to "(1) the adoption of a policy that in the absence of a complaint being filed raising specific allegations against deputies, there is no further investigation conducted following the use of force other than the filing of reports by the officers involved and those that witnessed the event;" and "(2) the adoption of a policy that delegates the enforcement of use of force policies through a criminal review by the District Attorney's Office to determine if disciplinary action should be taken against officers using deadly force." *Id.*

## IV.

## Summary of the Argument

10.    Summary judgment is proper on each issue. Defendants contend that the Sheriff's Office has no capacity to sue and be sued. Therefore, the Bexar County Sheriff's Office is not a proper party and should be dismissed.

11.    The claims against the individual defendants in their official capacity are redundant and should be dismissed.

12.    The Sheriff's Office trained Deputies Vasquez and Sanchez in areas relevant to Plaintiffs' claims.  The training was in compliance with the Texas Commission on Law Enforcement. The deposition testimony of Deputies Vasquez and Sanchez demonstrate that they were trained in these areas and understood the standard that controls law enforcement officers' use of deadly force. Even if the Plaintiffs' could point to a training insufficiency,

these Deputies have no record of previous conduct that would have alerted the Bexar County Sheriff that more or different training was obviously needed. In light of the evidence of training, it cannot be reasonably said that the Sheriff was deliberately indifferent to the alleged need for training. There is no cause in fact connecting law enforcement training to Deputies Vasquez and Sanchez' use of deadly force.

13. The use of force section of the Sheriff's Office policy manual provides a set of comprehensive rules that together with training permissibly guide deputies in the lawful performance of their duties. These policies guide and limit the discretion conferred upon deputies regarding the lawful use of deadly force. The policies are not facially unlawful or otherwise promulgated, maintained, or administered with deliberate indifference. Plaintiffs' own interpretation of these policy statements does not provide evidence that the policy manual maintains a policy that allows deputies to intentionally engage in the unlawful use of deadly force. There is no causal link between the policies on which the Plaintiffs rely and the shooting of Flores.

14. Contrary to the facts alleged in the pleadings, the Sheriff's Office conducted two investigations into the Flores' shooting: a criminal investigation and an administrative investigation. The administrative investigation was initiated immediately after the incident and without a complaint being filed raising specific allegations against the Deputies. Plaintiffs' claims that alleged inadequacies in the investigations of officer-involved shootings improperly assumes, without factual basis, that deputy sheriffs actually know about the alleged inadequacies in the investigative and discipline process will necessarily lead deputies to perceive that they can use deadly force with impunity without fear of disciplinary action.

## V.

## Argument and Authority

### 1. Bexar County Sheriff's Office.

15. The Bexar County Sheriff's Office is a servient political agency of Bexar County, Texas and is not a separate legal entity subject to suit. *See Wyatt v. Bastrop County Sheriff's Office, et. al.*, 2013 U.S. Dist. LEXIS 185357 (W.D. Tex. 2013), citing *Guidry v. Jefferson County Detention Center*, 868 F. Supp. 189, 191 (E.D. Tex. 1994) (holding that the Jefferson County Detention Center is not a legal entity subject to suit); *Darby v. Pasadena Police Dep't*, 939 F.2d 311 (5th Cir. 1991) (holding that police and sheriff's departments are governmental subdivisions without capacity for independent legal action). Plaintiffs have sued the proper party in this lawsuit, Bexar County, Texas and therefore, the Bexar County Sheriff's Office is redundant in this lawsuit.

### 2. The Claims Against Gregory Vasquez and Robert Sanchez in Their Official Capacity.

16. The Plaintiffs' claims against each of the individual defendants in their official capacity should be dismissed because the claims are redundant, being the same as Plaintiffs' claims against Bexar County. "Official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent." In *Kentucky v. Graham*, 473 U.S. 159, 165, 167 n.14, 105 S.Ct. 3099, 3106 n.14, 87 L. Ed. 2d 114 (1985)("[t]here is no longer a need to bring official capacity actions against local government officials [because] under *Monell*, . . . local government units can be sued directly.") In this case, Bexar County itself is a defendant in the litigation, claims against specific individuals in their official capacities are redundant, and for that reason, courts in

the Fifth Circuit have found it is appropriate to dismiss them. *Flores v. Cameron Cnty., Tex.*, 92 F.3d 258, 261 (5th Cir. 1996).

### 3.     Claims related to Training.

17.     Plaintiffs argue that Bexar County's training pertaining to the use of deadly force and non-lethal control devices and tactics was inadequate. However, Plaintiffs provide no specific examples as to what training Deputies Vasquez and Sanchez should have received or how specifically their training is lacking. Deputies Vasquez and Sanchez had fulfilled all the educational training requirements necessary to become licensed and certified as a peace officer by the TCOLE. See "Exhibit K," which includes true and correct copies of Deputies Vasquez and Sanchez' TCOLE training transcript. The Sheriff's Office policy manual requires employees who hold a license regulated by TCOLE to be individually responsible to track and monitor their training to ensure that they meet TCOLE and Texas Legislative mandated training requirements. *See* "Exhibit L," at p. 62.  The Bexar County Sheriff's Academy provides sufficient number of the required classes that are made available throughout the year or training cycle to allow employees to meet their training needs. *Id.*, at p. 63.

18.     In August 2015, Defendant Vasquez had been a jailer for approximately 12 years and a peace officer for approximately 11 years. *See* "Exhibit K." During that time, he had completed over 2,400 hours in training. Immediately prior to August 2015, Deputy Vasquez had completed the following relevant training: course 2055, Firearms; course 3347, Lethal Electronic Control Device Update (Taser training); course 2095, Use of Force (Non-Intermediate Core Course; and course 2096, Arrests, Search & Seizure (Non-Intermediate Core Course). See Exhibit 1. In 2013, Deputy Vasquez completed course 3344, Less Lethal

Electronic Control Device Training (Taser training). In 2012, Deputy Vasquez completed course 3842, CIT-Update (Crisis Intervention Training Peace Officer Intermediate Options); and course 4001, Mental Health Officer Training Course. *Id.*

19. Prior to August 2015, Deputy Sanchez, had been a peace officer for approximately 23 years and a jailer for approximately 25 years. *Id.* During that time, he had completed over 3,000 hours of training. Immediately prior to August 2015, Deputy Sanchez had completed the following relevant training: course 2055, Firearms (2015, 2014 and 2013); course 3347, Less Lethal Electronic Control Device Update (2013 and 2011); course 2095, Use of Force (Non- Intermediate Core Course)(2015 and 2012); course, 2096 Arrest, Search & Seizure (Non-Intermediate Core Course)(2014 and 2000); course 3342, Tactical Firearms Training (2014); course 3843, CIT-Update (2013); and course 3841, Crisis Intervention Training (2006).

20. Generally, all that is required for a county to prevail in a claim based on inadequate training is compliance with state-mandated training standard for its officers. *Huong v. City of Port Arthur*, 961 F.Supp. 1003, 1007 (E.D. Tex 1997); *see also Rogers v. Bonnett*, SA-04-CA-0118-XR, 2009 U.S. Dist. LEXIS 62360, 2009 WL 2175104 (W.D. Texas July 21, 2009). Other district courts have adopted similar positions. *Id.*, citing *David v. Montgomery*, Civ. A. No. H-07-505, U.S. Dist. LEXIS 36616, 2009 WL 1226904 (S.D. Tex April 30, 2009) ("In general, a plaintiff cannot sustain a cause of action for failure to train if the law enforcement department meets the state standards for training of its law enforcement officers." (citing *Conner v. Travis County*, 209 F.3d 794, 798 (5th Cir. 2000)). *Conner* involved an allegation that the county should provide training in how to recognize a stroke. *Rogers*, 2009 LEXIS at Footnote 5.

21.     The Fifth Circuit noted in *Rogers* that the guards were trained in "the basic medical training required by Texas law" and that the plaintiffs submitted no evidence of inadequacy other than their allegations and the testimony of an expert, which was properly disregarded. *Id*. Further, in *Kalma v. City of Socorro*, Civ. A. No. EP-06-CA-418-DB, 2008 U.S. Dist. LEXIS 109441, 2008 WL 954165 (W.D. Tex. Mar. 17, 2008), Judge Briones noted that the city's officers were required to be licensed by TCLEOSE and that plaintiff's failure to identify any deficiency in the TCLEOSE training causally related to the injury defeated the claim. *City of Socorro*, 2008 U.S. Dist. LEXIS 109441 *21-23; *See also Rogers*, 2009 LEXIS at Footnote 5.

22.     An adequate training program must "enable officers to respond properly to the usual and recurring situations with which they must deal." *Canton v. Harris, 489 U.S. 378, 391, 103 L. Ed. 2d 412, 109 S. Ct. 1197, 1205 (1989)*. Prior to August 2015, Deputies Vasquez and Sanchez received training in regard to the use of force, Taser, critical incidents and mental health issues pursuant to standards of TCOLE. Therefore, Plaintiffs must show that this TCOLE standard of training was inadequate to enable Vasquez and Sanchez to deal with "usual and recurring situations" faced by peace officers. *See Benavides v. County of Wilson*, et. al., 955 F.2d 968 (5th Cir. 1992).

23.     Vasquez testified during his deposition that he has never before discharged his weapon while on duty; at the time of the incident, he understood the use of force policy, received use of force training, including "shoot don't shoot" simulated training, and when deadly force could be used, and had received training on the Sheriff's Office's use of force policy. *See* Vasquez' deposition at pp. 13, 17-18, 20-28, 35-36, 41, 47, 109-110. (Exhibit M). Sanchez' deposition also shows that he received similar training: "Exhibit N" at pp. 6-7, 18-

10

22, 23, 26-28, 30-33, 35-36, 39-40, 42-44, 46-48, 55-56, 61-70, 119, 120, 122, 127, 129, 159.

24.     It is not the County's burden to prove that TCOLE training is adequate; instead, the Plaintiffs have the burden to raise a fact issue on inadequacy. *See Rogers v. Bonnett*, 2009 U.S. Dist. LEXIS 62360 *32, 2009 WL 2175104 (W.D. Tex. July 21, 2009). The Plaintiffs cannot provide any evidence that TCOLE required training is inadequate.

25.     Because the Plaintiffs have not alleged any facts and cannot submit any proper summary judgment evidence supporting their allegations that a failure to provide adequate training to Deputies Vasquez and Sanchez caused the alleged unconstitutional violation, Bexar County is entitled to a summary judgment on Plaintiffs' claims in regard to failure to train.

### 4. Claims Related to Supervision

26.     In general, Plaintiffs complain about the inadequacy of the Sheriff's Office policies and supervision relating to the use of deadly force and the use of less than lethal force. Plaintiffs did not plead any specific instances of inadequate policy or supervision. However, the Sheriff's Office had in place a supervision policy that is adequate on its face. The supervision policy is a chain-of-command supervision scheme where supervision is delegated down a chain of command. *See* Exhibit L, at pp. 26-30 which is a true and correct copy of the policy.

27.     Lieutenants and Sergeants are in the chain of command. "A lieutenant is normally the second highest-ranking supervisor of a branch and is responsible for the entire operation of a shift or of a branch within a division. The Lieutenant shall be directly responsible for the actions of personnel assigned to their shift or branch and it is the lieutenant's duty to aid, to advise and cooperate with the assigned Captain in general

administrative matters of policy. In the absence of the captain, the lieutenant will assume the same authority, stature, and responsibilities as described in the position of Captain." "Exhibit L" at p. 27. "A sergeant is responsible for the direct supervision of the deputies assigned to the shift, which includes their overall performance of duties. The sergeant also functions directly under the next ranking officer to insure compliance with all Sheriff's orders and is responsible to provide the necessary aid, advice and assistance to the deputies serving under the sergeant's command." *Id.*, at p. 28.

28.     Here, Lt. Aron Von Muldau and Sgt. Roger Pedraza, pursuant to their supervisory duties, monitored the radio transmissions while the confrontation with Flores was taking place. Sgt. Pedraza was driving to the Flores residence when the shooting occurred. Lt. Muldau and Sgt. Pedraza provided specific instructions in response to information they received from the Deputies and the dispatcher over the radio. Lt. Muldau understood that Flores was running towards the house and that under the circumstances people inside the house were in imminent danger because Flores had already assaulted a young child and a female. Lt. Muldau instructed over the radio not to let Flores inside the house, and do what you need to do. When Sgt. Pedraza learned that Flores was attempting to enter the police vehicle, he stated over the radio "Stop him, means, stop him."

29.     Plaintiffs' acknowledged that these statement are of no consequence:

>   (BY MR. ROBERT WILSON) Q. All right. If, in fact, Mr. Flores was not
>   trying to get into that vehicle at the time they shot
>   him -- well, let me rephrase it.
>   Your order is based on the assumption that
>   he's still trying to get in the vehicle, correct?
>   A. That's correct.
>   Q. Once he is no longer trying to get in that
>   vehicle, is your order still to stop him from getting in
>   the vehicle? That doesn't make sense, does it?

>A. No.
>Q. That order would then no longer be applicable, would it?
>A. Yeah.
>Q. Because he's no longer trying to get into the vehicle, so they don't -- they aren't using -- that should not be any means to stop him from doing something he's no longer doing, right?
>A. That's correct.
>Q. Okay. So, in other words, your information in that order is only as good as the information that you're given, right?
>A. Yeah.
>Q. So after you gave that order did Mr. Sanchez or Mr. Vasquez ever get back on the radio and tell you, "He stepped away from the vehicle. He's no longer trying to get in it"?
>A. No, sir.

*See* Sgt. Pedraza's deposition at p. 148 ("Exhibit O"). The same is true regarding Lt. Muldau's statement. Paraphrasing the Plaintiffs, Lt. Muldau's instruction was no longer applicable if Flores did not enter the house. The video shows that Flores walked in the direction of the house, but did not enter the house. At the time of the shooting, Flores was not attempting to enter the house.

30. In any event, the Plaintiffs argue that the instructions by Lt. Muldau and Sgt. Pedraza reflect actionable policy statements. Defendants disagree. The facts do not show that Lt. Muldau and Sgt. Pedraza ordered the Deputies to shoot Flores. *See* Pedraza's deposition at pp. 1290-139, and Muldau's deposition at pp. 39-44, 46-49, 65-66 ("Exhibit P"). Lt. Muldau and Sgt. Pedraza were acting based on the information provided to them in rapidly-changing circumstances. It is undisputed that Lt. Muldau and Sgt. Peraza acted pursuant to the supervisory authority. However, the facts do not show that they acted pursuant to a policy, adopted with deliberate indifference, of ordering the use of

unjustifiable deadly force. Bexar County denies the existence of such policy. A governmental entity can only be liable in a section 1983 suit if a policy or custom of the government causes the alleged constitutional violation. A mere conclusory allegation concerning the governmental policy is not sufficient. *Williams v. City of Cleveland*, 736 F.3d 684 (5th Cir. 2013). Courts have noted that a plaintiff must state specific facts showing that an unlawful policy or custom exists. *Palmer v. City of San Antonio, Texas*, 810 F.2d 514, 516 (5th Cir. 1987). Here, the undisputed facts demonstrate that the Sheriff's Office provided supervision of Deputies Vasquez and Sanchez Enriquez, and a finding of § 1983 liability cannot be premised on an argument that the Sheriff's Office should have provided more or different supervision. *See City of Canton*, 489 U.S. at 390. Lastly, Plaintiffs argue the application of the alleged policy to the facts of this case and fail to show that the alleged policy was adopted and maintained with deliberate indifference to the constitutional rights of citizens.

31. Alternatively, if the Plaintiffs are seeking to hold Bexar County liable based on this isolated incident, the claim fails. Plaintiffs cannot impose liability upon Bexar County based on the conduct of Lt. Muldau and Sgt. Pedraza based on a single incident. A municipality may be held liable only for "acts which the municipality has officially sanctioned or ordered." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 113, 108 S. Ct. 915, 99 L. Ed. 2d 107 (1988). A municipality can incur liability based upon the isolated actions or decisions of municipal officials only if such an official possesses "final policymaking authority." *Id.* In Texas, the Sheriff is as a matter of law the official policymaking authority for Bexar County in the area of law enforcement. *See Williams v. Kaufman County*, 352 F.3d 994, 1013 (5th Cir. 2003). Even when liability is sought under the "single incident" theory,"the challenged

action must have been taken pursuant to a policy adopted by the official or officials responsible under state law for making policy in that area of the city's business." *Praprotnik*, 485 U.S. 113. The Fifth Circuit has expressed reluctance to sustain a § 1983 claim based on a single incident and the opinion of an expert. *See Conner v. Travis Cty.*, 209 F.3d 794, 797 (5th Cir. 2000); *Snyder v. Trepagnier*, 142 F.3d 791, 796-97 (5th Cir. 1998). The crux of Plaintiffs' contention is that Lt. Muldau and Sgt. Pedraza gave instructions over the radio pursuant to information that became stale because of the fluid situation. No policy statement from the Sheriff's Office was the moving force of that conduct. *See, e.g.*, *Bennett v. City of Slidell*, 728 F.2d 762, 768 (5th Cir. 1984), *cert. denied*, 472 U.S. 1016 (1985); *McKee v. City of Rockwall*, 877 F.2d 409, 415 (5th Cir. 1989), *cert. denied*, 493 U.S. 1023 (1990).

     **5. Claims Related to the Policy Manual.**

32. Attached is the version of Chapter 9 (use of force) of the Sheriff's Office Manual ("Manual") that became effective on April 30, 2014. "Exhibit L" at p. 100, *et seq*. The use of force section provides a set of comprehensive rules that together with training permissibly guide deputies in the lawful performance of their duties. These policies guide and limit the discretion conferred upon deputies regarding the lawful use of force. The policies, when read in harmony with each other rather than in isolated pieces, are not facially unlawful or otherwise promulgated, maintained, or administered with deliberate indifference. Plaintiffs' own interpretation of these policy statements, which they read in isolated pieces, does not provide evidence that the policy manual maintains a policy that allows deputies to intentionally engage, with the utmost discretion, in the unlawful use of deadly force.

33.     For instance, the stated use of force policy is that "deputies use only the force that reasonably appears necessary to effectively bring an incident under control, while protecting the lives of the officer and others the use of force must be objectively reasonable. The deputy must only use that force which a reasonably prudent officer would use under the same or similar circumstances." Manual, sec. 9.01. The policies describe an escalating series of actions an officer may take to resolve a situation. *See* sec. 9.02(F). This continuum has several levels, and officers are instructed to respond with a level of force appropriate to the situation at hand, acknowledging that the officer may immediately move from one part of the continuum to another depending on the circumstances. *See* sec. 9.02(B) and (F)(3); sec 9.02(D)(Every reasonable opportunity to comply with the request for cooperation must be given to the person and force used only after all other reasonable means have failed to produce compliance.)

34.     The noted provisions discuss in general the use of force and should be read in conjunction with Section 9.10, which discusses the use of deadly force.[3] An officer may use deadly force only in situations that indicate the officer or another person may be seriously injured or killed if the deadly force is not used. Manual, sec. 9.10(e). Contrary to Plaintiffs' contention, this is an objective standard. The Manual directs deputies, without reservations, to exhaust every reasonable means of employing only that amount of deadly force necessary to accomplish the purpose (sec. 9.10(g)); where feasible, a verbal warning shall be given to the offender prior to the use of deadly force (sec. 9.10(h)); and once the immediate danger of death or serious bodily injury to an officer or another person has passed, deadly force

---

[3] Plaintiffs' criticism of the policies is limited to the general provisions of Chapter 9, i.e., section 9.02(B), (D) and (F).

shall not be used (sec. 9.10(I)). The Manual also describes with particularity the circumstances deputies must take into account when using deadly force (sec. 9.10(j)), and significantly limit the discharge of a firearm and the use of deadly force by first, defining as deadly certain conduct that would not otherwise be considered deadly force and, second, prohibiting the discharge of a weapon under certain circumstances. *See* sec. 9.10(f),(l),(m)(m), and 9.11.

35.  A fair reading of the Manual does not support a causal link between the policies the Plaintiffs criticize and the shooting of Flores. Importantly, Plaintiffs' criticisms are limited to this case. Plaintiffs have failed to identify other instances where the identified policy statements were so inadequate as to suggest that the Sheriff's Office was deliberately indifferent to a known or obvious consequence of following said policy statements.

### 6. Claims Related the Investigative and Discipline Process.

36.  There is no rational basis for the proposition that alleged inadequacies in the investigations, including conducting one investigation as opposed to two investigations, and/or discipline will necessarily lead officers to perceive that they can shoot citizens with impunity because they are not going to get caught.[4] The Plaintiffs do not argue that the Sheriff's Office criminal investigations into shooting incidents are inadequate or that they are not presented to the District Attorney for review and prosecution. It stands to reason that the potential for criminal prosecution and prison under state or federal law should be sufficient to deter deputies from believing that they can use deadly force with the knowledge

---

[4] It is undisputed that here the Sheriff's Office conducted two investigations into the Flores' shooting: a criminal investigation and an administrative investigation. A copy of the summary of the administrative investigation is attached as "Exhibit Q." The administrative investigation was initiated immediately after the incident and without a complaint being filed raising specific allegations against the Deputies.

that the Sheriff's Office would exact no consequence for their actions.

37. Plaintiffs' argument also fails because it improperly assumes, without a factual basis, that deputy sheriffs actually know that the alleged inadequacies in the investigative and discipline process actually exists in the Bexar County Sheriff's Office. Even if Plaintiffs' premise is factually reliable, if the Plaintiffs present no evidence that Bexar County deputies had actual or constructive knowledge of or the official policymaker acquiesced to inadequate investigations or discipline resulting in a "culture of impunity," then summary judgment is proper because there no evidence of a "policy, custom or practice." *See Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989).(A policy is official only "when it results from the decision or acquiescence of the municipal officer or body with 'final policymaking authority' over the subject matter of the offending policy."); *See Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984)(defining official policy).

38. Even if Plaintiffs can established that there was a "culture of impunity" resulting from inadequate investigations and discipline, the Plaintiffs present no evidence of causation, that is, that it was generally known in the Sheriff's Office or that the Sheriff or Deputies Vasquez and Sanchez had actual knowledge of a "culture of impunity." *James v. Harris County*, 508 F. Supp. 2d 535, 550, 2007 U.S. Dist. LEXIS 60962 (S.D. Tex. 2007), aff'd 577 F.3d 612, 619 (5th Cir. 2009) (finding an inadequate investigation policy did not cause plaintiff's harm because there was no evidence that the poor investigation was known generally or by those who used excessive force).

Wherefore, premises considered, Defendants pray that this motion be granted, that all claims against these Defendants be dismissed and pray for further relief to which the Defendants may be entitled in law or equity.

                          Respectfully Submitted,

                          LAW OFFICES OF ALBERT LÓPEZ
                          14310 Northbrook Dr., Suite 200
                          San Antonio, Texas 78232
                          Telephone: (210) 404-1983
                          Fax: (210) 404-1990

                          By: /s/ Albert López
                              ALBERT LÓPEZ
                              State Bar No. 12562350
                              alopezoffice@gmail.com
                          ATTORNEY FOR DEFENDANTS

## CERTIFICATE OF SERVICE

I hereby certify that on June 30, 2017, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Mr. Robert Wilson
Law Offices of Thomas J. Henry
21 Starr Street
Corpus Christi, Texas 78401

Charles S. Frigerio
Law Offices of Charles S. Frigerio
111 Soledad, Suite 840
San Antonio, Texas 78205

                              /s/ Albert López
                                Albert López