***CORRECTED***

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 17-51001

D.C. Docket No. 5:15-CV-810-FB

United States Court of Appeals
Fifth Circuit
**FILED**
June 3, 2020
Lyle W. Cayce
Clerk

MARITZA AMADOR, Individually and as Representative of The Estate of Gilbert Flores and as Next Friend of Minor R.M.F.; VANESSA FLORES; MARISELA FLORES; CARMEN FLORES; ROGELIO FLORES,

    Plaintiffs - Appellees

v.

OFFICER GREG VASQUEZ, Individually and in his Official Capacity; OFFICER ROBERT SANCHEZ, Individually and in his Official Capacity,

    Defendants - Appellants

Appeal from the United States District Court for the
Western District of Texas

Before HIGGINBOTHAM, GRAVES, and WILLETT, Circuit Judges.

## JUDGMENT

This cause was considered on the record on appeal and was argued by counsel.

It is ordered and adjudged that the appeal is dismissed for lack of jurisdiction.

IT IS FURTHER ORDERED that appellants pay to appellees the costs on appeal to be taxed by the Clerk of this Court.



Certified as a true copy and issued
as the mandate on Jun 03, 2020

Attest: *Lyle W. Cayce*
Clerk, U.S. Court of Appeals, Fifth Circuit

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**
June 3, 2020

Lyle W. Cayce
Clerk

No. 17-51001

MARITZA AMADOR, Individually and as Representative of The Estate of Gilbert Flores and as Next Friend of Minor R.M.F.; VANESSA FLORES; MARISELA FLORES; CARMEN FLORES; ROGELIO FLORES,

    Plaintiffs - Appellees

v.

OFFICER GREG VASQUEZ, Individually and in his Official Capacity; OFFICER ROBERT SANCHEZ, Individually and in his Official Capacity,

    Defendants - Appellants

---

Appeal from the United States District Court
for the Western District of Texas
5:15-CV-810-FB

ON PETITION FOR REHEARING

Before HIGGINBOTHAM, GRAVES, and WILLETT, Circuit Judges.
JAMES E. GRAVES, JR., Circuit Judge

    Treating the petition for *en banc* rehearing as a petition for panel rehearing, we grant rehearing, withdraw our opinion dated March 11, 2020, and substitute the following opinion:

    While responding to a domestic violence call, Bexar County Sheriff's Deputies Greg Vasquez and Robert Sanchez shot and killed knife-armed Gilbert Flores after a twelve-minute encounter that ended with Flores standing nearly thirty feet from the deputies, motionless, and with his hands

Case: 5:15-cv-00810-RCL Document 175 Filed 06/03/20 Page 3 of 15
Case: 17-51001 Document: 00515439666 Page: 2 Date Filed: 06/03/2020

No. 17-51001

in the air. Flores's wife and other surviving family members (collectively, the "Estate" or "Plaintiffs") brought a 42 U.S.C. § 1983 claim against the deputies, alleging that Vasquez and Sanchez violated Flores's Fourth Amendment right to be free from excessive force. The deputies moved for summary judgment based on qualified immunity. The district court denied the motion, finding that there were genuine issues of material fact. The deputies filed this interlocutory appeal. Because we agree with the district court that genuine issues of material fact exist, we lack jurisdiction to review this appeal. Accordingly, we DISMISS.

## SUMMARY JUDGMENT EVIDENCE[1]

In 2015, after a domestic dispute between Flores and his wife at Flores's mother's home, Flores's mother called 9-1-1 for assistance. According to the 9-1-1 call transcript, Flores's mother told the dispatcher that Flores beat up his wife and had "gone crazy". Deputies Vasquez and Sanchez were dispatched to the residence in separate vehicles. While in route, dispatch advised Vasquez

---

[1] These facts are gleaned from the record on appeal and the district court findings. *See Wagner v. Bay City*, 227 F.3d 316, 320 (5th Cir. 2000) ("In deciding an interlocutory appeal of a denial of qualified immunity, we can review the *materiality* of any factual disputes, but not their *genuineness*.") (emphasis in original). The record contains an audiovisual recording of the encounter filmed by a bystander with a phone. The enhanced video may be accessed via the following internet link: http://www.ca5.uscourts.gov/opinions/pub/17/17-51001.mp4. We analyze the video evidence to determine whether it "utterly discredit[s]" the Estate's version of events such that "no reasonable jury could have believed [the Estate]." *See Scott v. Harris*, 550 U.S. 372, 380 (2007); *see also Carnaby v. City of Houston*, 636 F.3d 183, 187 (5th Cir. 2011) ("A court of appeals need not rely on [a] description of the facts where the record discredits that description but should instead consider the facts in light depicted by the videotape.") (citation and internal quotation marks omitted). We determine that the video does not utterly discredit the Estate's version of events or the district court's determinations regarding the genuineness of facts.

2

No. 17-51001

and Sanchez that Flores was upset, and that Flores wanted to commit "suicide by cop."[2] Vasquez was also informed that Flores had a knife.

Twelve minutes elapsed between Vasquez's arrival and the officers' fatal shots at Flores.[3] During those twelve minutes, the deputies had a number of encounters with Flores, and ultimately deescalated the situation. It was only after Flores was standing nearly thirty feet from the deputies, motionless, and with his hands in the air for several seconds that the officers looked at each other and then decided to shoot Flores. The officers each fired a shot, and Flores fell to the ground. Viewing the facts in the light most favorable to the Estate, *Tolan v. Cotton*, 572 U.S. 650, 655–56 (2014), we summarize the encounters.

### Encounter #1

Vasquez arrived at the residence first, went into the house, and had an altercation with Flores who was holding a fixed blade Ozark Trail knife. Vasquez attempted to calm Flores and told him, "put the knife down, you're going to be alright." Flores began approaching Vasquez, and Vasquez retreated out of the residence.

### Encounter #2

Not long after Vasquez retreated outside, Flores exited the residence with the knife in hand and allegedly stabbed at Vasquez, striking Vasquez's protective shield. During this altercation, Sanchez arrived. Flores then began retreating toward the house.

---

[2] Flores could be heard during the 9-1-1 call saying, "I got a knife and I'm going to suicide by cop, so bring a SWAT team, or uh uh uh or whoever is going to be ready to pull the trigger because I'm going to die today."

[3] Sanchez arrived one minute after Vasquez.

3

Case 5:15-cv-00810-RCL Document 175 Filed 06/03/20 Page 5 of 15
Case: 17-51001 Document: 00515439666 Page: 4 Date Filed: 06/03/2020

No. 17-51001

### Encounter #3

As Flores retreated toward the house, Sanchez fired one shot at Flores and missed.

### Encounter #4

Flores went back to the residence, retrieved two metal folding chairs, and came back outside. While still holding at least one of the folding chairs, Flores allegedly came at Vasquez with the knife. Vasquez blocked the knife with his protective shield and deployed his taser at Flores. The taser missed Flores and hit a chair in Flores's hand, and its wires became entangled with the chair. Vasquez then struck Flores with the taser gun and dropped it from his hand. Flores then went back toward the residence.

At some point around this time, a bystander began videotaping the encounter on a phone.

### Encounter #5

For the first few minutes of the video, Flores, wearing only shorts and flip flops, and the officers, each holding a gun, talked and maintained distance from each other: Flores closer to the residence and the officers in or near the street. Around minute marker 4:20, Flores picked up the two metal chairs and walked toward the police officers in the street. The officers retreated, walking backwards away from Flores. Flores picked up the deployed taser that Vasquez dropped, walked back to the lawn, dropped the chairs, and chucked the taser away from the officers. The officers continued to retreat, backing away from Flores.[4] *See* Video at 5:20–24.

### Encounter #6

For over a minute, Flores talked and gestured at the officers from the lawn area, remaining some distance away from the officers. During this time,

---

[4] The officers contend that Flores attempted to activate the taser against them.

4

Case 5:15-cv-00810-RCL Document 175 Filed 06/03/20 Page 6 of 15
Case: 17-51001 Document: 00515439666 Page: 5 Date Filed: 06/03/2020

No. 17-51001

the officers were not in the video and when they reappeared, they were in the street beyond the neighbor's residence. Flores then jogged back toward the house, picked up the chairs on the lawn, and placed the chairs on the porch. Around the seven-minute mark, Flores trotted and walked toward the officers' unlocked patrol SUV, which had an AR-15 inside and keys in the ignition. While Flores was on the other side of the patrol SUV, he was out of view of the video recording. The officers, in view, jogged toward the vehicle and Vasquez pointed his gun at Flores. *See* Video at 7:10.

Flores walked away from the vehicle and toward the officers, talking and gesturing, then went back toward the vehicle. The officers advanced toward Flores. Flores was out of view of the camera until he again walked away from the vehicle. In full view of the video recording, Flores then stood in the driveway of the residence, some steps away from the SUV, and some distance from the officers. At 7:32, Flores moved the knife from his right hand to his left hand. Sanchez had his gun drawn. At 7:33, Flores stood stationary in the driveway.

### Encounter #7

At 7:34, Flores was stationary in the driveway, approximately thirty feet from Vasquez, who was in the street with a protective shield and drawn gun. Sanchez was approximately thirty feet from Flores as well. Flores was closer to the SUV than he was to the officers. At 7:35, Flores, still stationary in the driveway, put both arms up in the air with his hands above his head and the knife in his palm and remained motionless. There was nothing behind the officers hindering their ability to retreat backwards. For about five seconds, Flores did not advance toward the officers, the vehicle, or the home.

### Encounter #8

While Flores stood motionless with his hands in the air, Sanchez turned to look toward Vasquez. At about 7:37, Vasquez and Sanchez fatally shot

No. 17-51001

Flores, who stood motionless in a surrender pose. Flores fell backward onto the pavement.

## PROCEDURAL HISTORY

The Estate sued the county and the officers under § 1983 for excessive force. The county and the officers moved for summary judgment. The officers argued that they were entitled to qualified immunity. The district court granted the county's motion and denied the officers' motion. In denying the officers' request for qualified immunity, the district court determined there were genuine issues of material fact, and construing the facts in favor of Plaintiffs, the deputies' use of deadly force was objectively unreasonable. The district court found that the deputies' use of deadly force was unreasonable because Flores, "who was stationary for several seconds and put his hands in the air while remaining otherwise motionless, was no longer resisting and had signaled surrender." The officers now appeal.

## JURISDICTION AND STANDARD OF REVIEW

This court has jurisdiction over appeals from a district court's final decision. 28 U.S.C. § 1291. "Ordinarily, [this court does] not have jurisdiction to review a denial of a summary judgment motion because such a decision is not final within the meaning of 28 U.S.C. § 1291." *Perniciaro v. Lea*, 901 F.3d 241, 250 (5th Cir. 2018) (citation and internal quotation marks omitted). "However, the 'denial of qualified immunity on a motion for summary judgment is immediately appealable if it is based on a conclusion of law.'" *Id.* (quoting *Palmer v. Johnson*, 193 F.3d 346, 350 (5th Cir. 1999)). "We have no jurisdiction to hear an interlocutory appeal, however, when a district court's denial of qualified immunity rests on the basis that genuine issues of material fact exist." *Michalik v. Hermann*, 422 F.3d 252, 257 (5th Cir. 2005).

"Because of this case's posture . . . review is limited to determining whether the factual disputes that the district court identified are material to

Case 5:15-cv-00810-RCL  Document 175  Filed 06/03/20  Page 8 of 15
Case: 17-51001  Document: 00515439666  Page: 7  Date Filed: 06/03/2020

No. 17-51001

the application of qualified immunity." *Samples v. Vadzemnieks*, 900 F.3d 655, 660 (5th Cir. 2018) (emphasis omitted); *see also Mitchell v. Mills*, 895 F.3d 365, 369 (5th Cir. 2018) (concluding that the court's "review is limited to evaluating only the legal significance of the undisputed facts").

This court accepts "plaintiff's version of the facts as true and [reviews the facts] through the lens of qualified immunity." *Samples*, 900 F.3d at 660. "If the defendant would still be entitled to qualified immunity under this view of the facts, then any disputed fact issues are not material, the district court's denial of summary judgment was improper, and [this court] must reverse; otherwise, the disputed factual issues are material and [this court] lack[s] jurisdiction over the appeal." *Lytle v. Bexar County.*, 560 F.3d 404, 409 (5th Cir. 2009). Put another way, "[i]f a factual dispute must be resolved to make the qualified immunity determination, that fact issue is material and we lack jurisdiction over the appeal." *Manis v. Lawson*, 585 F.3d 839, 843 (5th Cir. 2009).

The court reviews materiality and legal conclusions *de novo*. *Hampton v. Oktibbeha Cty. Sheriff Dep't*, 480 F.3d 358, 364 (5th Cir. 2007). The "scope of clearly established law and the objective reasonableness of those acts of the defendant that the district court found the plaintiff could prove at trial are legal issues we review *de novo*." *Thompson v. Upshur County.*, 245 F.3d 447, 456 (5th Cir. 2001).

## DISCUSSION

"Qualified immunity shields from liability 'all but the plainly incompetent or those who knowingly violate the law.'" *Romero v. City of Grapevine*, 888 F.3d 170, 176 (5th Cir. 2018) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). "In determining whether an officer is entitled to qualified immunity, courts engage in a two-step inquiry." *Id.* "The first asks whether the facts, '[t]aken in the light most favorable to the party asserting

Case 5:15-cv-00810-RCL Document 175 Filed 06/03/20 Page 9 of 15
Case: 17-51001 Document: 00515439666 Page: 8 Date Filed: 06/03/2020

No. 17-51001

the injury, . . . show the officer's conduct violated a [federal] right [.]'" *Tolan*, 572 U.S. at 655–56 (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). The second "asks whether the right in question was 'clearly established' at the time of the violation." *Id.* at 656 (citing *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)).

## I. The Officers Violated Flores's Fourth Amendment Right

The first question in the qualified immunity analysis is whether Officers Vasquez and Sanchez violated Flores's Fourth Amendment right to be free from excessive force.[5] *See Romero*, 888 F.3d at 176. When the facts here are taken in the light most favorable to Plaintiffs, the answer is yes.

"The use of deadly force violates the Fourth Amendment unless 'the officer[s] [have] probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer[s] or to others.'" *Id.* (quoting *Tennessee v. Garner*, 471 U.S. 1, 11 (1985)). To prevail on an excessive force claim, plaintiffs must show that the force employed was objectively unreasonable. *Graham v. Connor*, 490 U.S. 386, 397 (1989). "Excessive force claims are necessarily fact-intensive; whether the force used is 'excessive' or 'unreasonable' depends on the facts and circumstances of each particular case." *Darden*, 880 F.3d at 728 (citation and internal quotation marks omitted). "In making this determination, a court should consider the totality of the circumstances, 'including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Id.* at 728–29 (quoting *Graham*, 490 U.S. at 396). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 729

---

[5] Because it is alleged that the officers acted in unison, we need not separately address the qualified immunity analysis for each officer. *See Darden v. City of Fort Worth*, 880 F.3d 722, 731 (5th Cir.), *cert. denied sub nom. City of Fort Worth v. Darden*, 139 S. Ct. 69 (2018).

Case 5:15-cv-00810-RCL Document 175 Filed 06/03/20 Page 10 of 15
Case: 17-51001 Document: 00515439666 Page: 9 Date Filed: 06/03/2020

No. 17-51001

(citation and internal quotation marks omitted). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* (citation and internal quotation marks omitted). However, "[t]he question is one of objective reasonableness, not subjective intent, and an officer's conduct must be judged in light of the circumstances confronting him, without the benefit of hindsight." *Manis*, 585 F.3d at 843 (citation and internal quotation marks omitted).

Further, "[i]t is well-established that '[t]he excessive force inquiry is confined to whether the [officers or other persons were] in danger at the moment of the threat that resulted in the [officers' use of deadly force].'" *Rockwell v. Brown*, 664 F.3d 985, 992–93 (5th Cir. 2011) (quoting *Bazan ex rel. Bazan v. Hidalgo County.*, 246 F.3d 481, 493 (5th Cir. 2001)) (emphasis omitted). So, the focus of the inquiry should be on "the act that led [the officer] to discharge his weapon[.]" *Manis*, 585 F.3d at 845.

Applying that framework, the district court found three genuine disputes of material fact that barred qualified immunity because resolving those facts in Plaintiffs' favor led the court to conclude that shooting Flores was objectively unreasonable. The district court found the relevant, genuine disputes of material fact to be: (1) "whether Flores did open the door or did look inside to see the keys in the ignition or see the weapon that was inside the SUV"; (2) whether Flores tried to activate the taser against the officers; and (3) what occurred in the moments before the deputies shot Flores.

Considering the totality of the circumstances, focusing on the act that led the officers to discharge their weapons, and without reviewing the district court's decision that genuine factual disputes exist, *see Kinney v. Weaver*, 367 F.3d 337, 348 (5th Cir. 2004), we conclude that the genuine issues of material

Case 5:15-cv-00810-RCL   Document 175   Filed 06/03/20   Page 11 of 15
Case: 17-51001      Document: 00515439666      Page: 10      Date Filed: 06/03/2020

No. 17-51001

fact identified by the district court are material, and this case should proceed to trial.

Relying on their version of the facts, yet purportedly relying on the video, the officers argue that they reasonably believed that Flores posed a threat of serious harm to the officers or to others.[6] According to the officers, Flores "opened the front passenger door of the Tahoe Patrol vehicle of Deputy Vasquez, [sic] said vehicle had the keys in the ignition and an AR-15 inside the vehicle." They further contend that Flores "picked up Deputy Vasquez' [sic] taser from the street and attempted to activate it against Deputy [sic] Vasquez and Sanchez but was unsuccessful." Most significantly, the officers assert that "Deputies Vasquez and Sanchez were in imminent fear of death or serious bodily injury by the actions of Gilbert Flores *at the time of the fatal shots.*" (emphasis added). However, Plaintiffs assert that at the time Flores was shot, Flores was not next to the patrol car, Flores had "raised both of his hands directly above his head with the knife 'palmed' in his left hand" and "raised his hands in apparent surrender, stood still, his hands were not moving, his feet were not moving, he was not moving or advancing toward the Deputies and no family members of [sic] neighbors were outside or in the vicinity."

Collectively, these factual disputes are material to resolving whether the officers reasonably believed that Flores posed a threat of serious harm at the time of the shooting. Construing the facts in Plaintiffs' favor, the district court found that a "reasonable officer would have concluded that Flores, who was stationary for several seconds and put his hands in the air while remaining otherwise motionless, was no longer resisting and had signaled surrender." We agree.

---

[6] The officers present different "scenarios" that would have justified them using "deadly force." We refuse to speculate on whether it would have been reasonable to kill Flores in those scenarios, which are not before this court.

10

Case 5:15-cv-00810-RCL Document 175 Filed 06/03/20 Page 12 of 15
Case: 17-51001 Document: 00515439666 Page: 11 Date Filed: 06/03/2020

No. 17-51001

Flores had a knife, not a gun; was several feet away from the officers, the house, and the vehicle; had his hands in the air in a surrender position; and stood stationary in the officers' line of sight. Under these facts taken in the light most favorable to Plaintiffs, we conclude that the district court correctly identified material factual disputes as to whether the officers violated Flores's Fourth Amendment rights. Accordingly, we must address the second question of the analysis.

## II. Flores's Fourth Amendment Right Was Clearly Established

The second question in the qualified immunity analysis is whether clearly established law prohibited the officers from shooting Flores in these circumstances. *City of Escondido v. Emmons*, 139 S. Ct. 500, 503 (2019). Again, the answer is yes.

"A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (per curiam) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). We cannot "'define clearly established law at a high level of generality,'" *id.* (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)), especially in "the Fourth Amendment context, where the Court has recognized that '[i]t is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts,'" *id.* (quoting *Katz*, 533 U.S. at 205). "Where constitutional guidelines seem inapplicable or too remote, it does not suffice for a court simply to state that an officer may not use unreasonable and excessive force, deny qualified immunity, and then remit the case for a trial on the question of reasonableness." *Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018) (per curiam). "An officer 'cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating

11

Case 5:15-cv-00810-RCL Document 175 Filed 06/03/20 Page 13 of 15
Case: 17-51001 Document: 00515439666 Page: 12 Date Filed: 06/03/2020

No. 17-51001

it.'" *Id.* (quoting *Plumhoff v. Rickard*, 572 U.S. 765, 778–79 (2014)). We do "not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* at 1152 (citation and internal quotation marks omitted).

"[T]he salient question . . . is whether the state of the law in [2015] gave [the officers] fair warning that their alleged treatment of [Flores] was unconstitutional." *Hope*, 536 U.S. at 741. "[G]eneral statements of the law are not inherently incapable of giving fair and clear warning" to officers. *Id.* In fact, "officials can still be on notice that their conduct violates established law even in novel factual circumstances." *Id.* "[T]here can be the rare obvious case, where the unlawfulness of the officer's conduct is sufficiently clear even though existing precedent does not address similar circumstances[.]" *Emmons*, 139 S. Ct. at 504 (citation and internal quotation marks omitted).

"In the excessive force context, a constitutional violation is clearly established if no reasonable officer could believe the act was lawful." *Darden*, 880 F.3d at 727. "Our case law makes clear that when an arrestee is not actively resisting arrest the degree of force an officer can employ is reduced." *Id.* at 731; *see Bush v. Strain*, 513 F.3d 492, 502 (5th Cir. 2008) (holding that it was objectively unreasonable for an officer to slam an arrestee's face into a vehicle when the arrestee "was not resisting arrest or attempting to flee"); *Newman v. Guedry*, 703 F.3d 757, 760, 763 (5th Cir. 2012) (holding that it was objectively unreasonable for officers to tase an arrestee when the arrestee's "behavior did not rise to the level of 'active resistance,'" despite the arrestee's alleged noncompliance with orders).

Every reasonable officer would have understood that using deadly force on a man holding a knife, but standing nearly thirty feet from the deputies, motionless, and with his hands in the air for several seconds, would violate the Fourth Amendment. The officers argue that they were justified in using deadly

No. 17-51001

force because Flores posed an immediate threat at several instances before their ultimate use of deadly force. However, "an exercise of force that is reasonable at one moment can become unreasonable in the next if the justification for the use of the force has ceased." *Lytle*, 560 F.3d at 413. To say otherwise would grant officers "'an ongoing license to kill an otherwise unthreatening suspect'" who was threatening earlier. *Id.* (quoting *Abraham v. Raso*, 183 F.3d 279, 294 (3d Cir. 1999)).

In *Lytle*, taking the facts in the light most favorable to the plaintiff, we found that the officer could have "had sufficient time to perceive that any threat to him had passed by the time he fired[,]" which was "anywhere from three to ten seconds, perhaps even more" after the perceived threat, rather than "in near contemporaneity" with the perceived threat. 560 F.3d at 414 (citation and internal quotation marks omitted). Here, Vasquez and Sanchez had about five seconds to evaluate Flores, standing thirty feet away from them with a knife and with his hands in the air, before shooting him. At the time of the shooting, Flores's right in this case was "'sufficiently clear that every reasonable official would have understood that what [the officers did] violate[d] that right.'" *Mullenix*, 136 S. Ct. at 308 (quoting *Reichle*, 566 U.S. at 664).

We find that if a jury accepts Plaintiffs' version of the facts as true, particularly as to what occurred in the moments before the deputies shot Flores, the jury could conclude that the officers violated Flores's clearly established right to be free from excessive force. *See Cole v. Carson*, 935 F.3d 444, 447, *as revised* (5th Cir. Aug. 21, 2019) (en banc) ("We conclude that it will be for a jury, and not judges, to resolve the competing factual narratives as detailed in the district court opinion and the record as to the . . . excessive-force claim."). Accordingly, there are factual disputes that must be resolved to make the qualified immunity determination, disputes that are material, and we lack jurisdiction over this interlocutory appeal. *See Manis*, 585 F.3d at 843.

13

No. 17-51001

## CONCLUSION

Because there are genuine issues of material fact that preclude summary judgment, we lack jurisdiction to review this appeal and DISMISS.