**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **MARITZA AMADOR, INDIVIDUALLY** | § | |
| **AND AS REPRESENTATIVE OF THE** | § | |
| **ESTATE OF GILBERT FLORES AND** | § | |
| **AS NEXT FRIEND OF MINOR R.M.F.,** | § | |
| **VANESSA FLORES, MARISELA** | § | |
| **FLORES, CARMEN FLORES AND** | § | |
| **ROGELIO FLORES** | § | |
|    **Plaintiffs,** | § | |
| | § | **CIVIL ACTION NO.5:15-CV-00810RCL** |
| **V.** | § | |
| | § | |
| **BEXAR COUNTY, GREG VASQUEZ** | § | |
| **Individually and in his Official Capacity** | § | |
| **and ROBERT SANCHEZ, Individually** | § | |
| **and in his Official Capacity** | § | |
|    **Defendants,** | § | |

**PLAINTIFFS' SUPPLEMENTAL RESPONSE TO DEFENDANTS' SUPPLEMENTAL *MOTION IN LIMINE* AND TRIAL BRIEF CONCERNING PLAINTIFF'S EXPERT GRANT FREDERICKS**

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE ROYCE C. LAMBERTH:

     COMES NOW Plaintiffs Maritza Amador, Individually and as Representative of the Estate of Gilbert Flores and as Next Friend of Minor R.M.F., Vanessa Flores, Marisela Flores, Carmen Flores and Rogelio Flores, and files this their Supplemental Response to Defendants' Supplemental *Motion in Limine* and Trial Brief Concerning Plaintiff's Expert Grant Fredericks and in support thereof would show the Court the following:

**I.**

     On March 18, 2022 as a supplement to their *Motion in Limine* the Defendants are attempting to exclude the Plaintiffs' forensic video analyst Grant Fredricks. This amounts to a

1

Daubert challenge which is well past the deadline and years after they have had Mr. Fredericks' opinions.

Further, the alleged reason that they contend he should not testify is the video speaks for itself and there is no need to have an expert provide an analysis of it. To the contrary, the Deputies and defense have raised the issue that the videos allegedly do not show the "advancement" necessitating the Plaintiffs' need to retain a video expert.

On August 28, 2015, the decedent, Deputies Vasquez and Sanchez fatally shot Gilbert Flores. A key point of contention and at issue in this case is what was occurring at the time Deputies Vasquez and Sanchez shot and killed Gilbert Flores. Two videos from two different perspectives captured the shooting and the moments leading up to the shooting.

Plaintiffs contend that Gilbert Flores was standing still, motionless, feet stationary, with his hands in the air, not moving the knife he was holding at the time he was shot and killed. Plaintiffs contend that there was no immediate threat of harm to Deputy Vasquez, Deputy Sanchez or any third party at the time they chose to use deadly force, and thus this force was excessive.

Defendants have offered sworn testimony and allege that Gilbert Flores was advancing, in attack mode, and moving at the time they used deadly force and that they were in immediate fear of serious bodily injury or death. Numerous witnesses for Defendants allege that the two videos do not depict everything that was occurring at the time they used deadly force. The Defendants have raised the issue that the videos do not accurately capture Mr. Flore's movements or what they were seeing at the time they used deadly force.

Plaintiffs' have retained Forensic Video Expert Fredericks to review the video and give a detailed analysis of what is actually shown in the video and what is actually occurring and intend to call Grant Fredericks as a witness during their case in chief.

Grant Fredericks a Certified Forensic Video Analyst with extensive experience in the recovery, scientific examination, and evaluation of recorded video and audio information involving criminal and civil investigations in the United States (US), Canada, the United Kingdom (UK), and elsewhere. Mr. Fredericks has been continuously active in this science since

2

1984.  He attained an undergraduate degree in Television Broadcast Communications, with an emphasis on television engineering in 1982.  As a Forensic Video Analyst, he has processed thousands of videotapes and computer discs containing digital multimedia evidence for both criminal and civil cases. Mr. Fredericks has been providing expert testimony as a Forensic Video Analyst since the early 1990's. In the past fifteen (15) years, he has provided expert testimony in the field of Forensic Video Analysis more than one hundred and fifty (150) times in US and Canadian courts at all levels. He has testified as an expert in Forensic Video Analysis in Washington State, Oregon, Idaho, California, Nevada, North Dakota, Colorado, Connecticut, Arizona, Iowa, Missouri, Massachusetts, Pennsylvania, Michigan, Maine, New York, North Carolina, Ohio, South Carolina, Texas, Florida, British Columbia, Alberta, Manitoba, Ontario, New Brunswick, in the Yukon Territories, London, England, Auckland, New Zealand, in the Cayman Islands, and elsewhere.

From 1999 until December of 2012, Mr. Fredericks was the Principal Instructor for a series of Forensic Video Analysis courses offered by the Law Enforcement & Emergency Services Video Association (LEVA), a non-profit organization that has trained more than 2800 law enforcement video analysts from throughout the world. From 2006 until December of 2012, he was the Team Leader for LEVA's Forensic Video Analysis Certification Program. From 1998 until 2013, he was the Team Leader of LEVA's Curriculum Development Committee, and Mr. Fredericks continues as an active member of the Committee.

For the last eighteen (18) years, he has been a contract instructor of Forensic Video Analysis and Digital Multimedia Evidence Processing for the Federal Bureau of Investigation (FBI) National Academy in Quantico, VA.  From 2006 until 2014, he was the Digital Video Advisor to the International Association of Chiefs of Police (IACP) for its In-Car Video project and for its Digital Interview Room Standards project, which are funded by the US Department of Justice (DOJ). These programs are focused specifically on the development of compression standards for improved performance of digital video systems to ensure accurate presentation in court. Mr. Fredericks is a co-author of the national standards for mobile video

3

recording systems for law enforcement. From 2004 until 2016 he was an instructor of Forensic Video Analysis for the University of Indianapolis, IN. Mr. Fredericks has provided more than 2900 hours of classroom instruction to video analysts from throughout the world who have attended the university's Digital Multimedia Evidence Processing Lab. Students serve as video analysts, primarily from law enforcement agencies in the US, Canada, the UK, Australia, and Asia. Each of the courses focused on digital video and analog video engineering principles, and on the application of proper scientific methodologies for processing digital multimedia evidence, including scientific techniques used to determine image timing intervals in order to accurately convert time-lapsed video into real-time video for synchronization of separately recorded video sources.

One of the courses that Mr. Fredericks taught at the University of Indianapolis is entitled Photographic/Video Comparisons, which focuses on the identification of vehicles, clothing, and weapons captured to digital and analog video recording sources. Vehicle identification examines class and unique characteristics of Questioned Vehicle, and often included headlight spread pattern analysis. He has taught this course in Canada at the British Columbia Institute of Technology, in the UK, and in Indianapolis for each of the last twenty-three (23) years. This course is accredited by LEVA, which recognizes the course in its Forensic Video Analysis Certification Program. He now teaches this course in various locations throughout the US and overseas.

A significant element of the Photographic/Video Comparison course material, and of the other courses that Mr. Fredericks teaches, involves the science of Reverse Projection. Reverse Projection is the scientific process of obtaining accurate measurements and making accurate observations from photographic and video images. Reverse Projection has been used among imaging scientists, investigators, and in US courts regularly for more than forty (40) years as a tool to reproduce crime and accident scenes, in order to conduct measurements and to make other accurate observations. Each of the courses that he teaches focuses on reflection of light, pixel tracking, digital compression technology, macroblock analysis, motion

vector analysis, color measurement/analysis, speed estimation, and on digital and analog artifact (error) identification for the sole purpose of ensuring accurate interpretation of video evidence. Since each of the signal and digital components could impact the meaning of images, the majority of testimony that he has provided includes a narrative explanation of the events captured to the video recording system.

He is a former Police Officer with the City of Vancouver Police Department in Canada where he was assigned to the Criminal Investigation Division as the head of the department's Forensic Video Unit. Mr. Fredericks' used this specialized knowledge, experience and tools to conduct his analysis and base his opinions.

## II.
## ARGUMENTS AND AUTHORITIES

Plaintiffs retained and designated Forensic Video Expert Grant Fredericks March 31, 2017. Plaintiffs served Grant Fredericks' CV, Case Testifying List, Expert Report with attachments: camera perspective analysis, fee schedule, motion vector analysis, 92 page frame by frame pdf document with shooting event analysis and Michael Thomas video observations. The deadline to file any Motions to Exclude or Strike Expert Testimony was to be filed eleven (11) days after the receipt of the expert report or the completion of the expert's deposition. Defendants never requested to depose Grant Fredericks, therefore, Defendants' Motion to Exclude or Strike the testimony of Grant Fredericks should have been filed by April 11, 2017. Defendants have been in receipt of Grant Fredericks' report and materials since 2017 and these same materials and items have been used repeatedly by Plaintiffs and courts in numerous filings in this case. Defendants have waited until the eve of trial to attempt to exclude or strike the testimony of Grant Fredericks couched as a "Supplemental *Motion in Limine*." The time to have challenged Mr. Fredericks' testimony was in 2017 and the time has well since passed for this type of Motion to be filed. For this reason alone, it should be denied.

As for the substance of their arguments, the contention that the "video speaks for itself" and an analysis of it would not aid the jury is in direct contradiction of the arguments and defenses raised by them.

Deputy Sanchez testified in his deposition that even though it appears and looks as if Flores is standing still, stationary, motionless, that Flores was moving and making movements and was a threat at the time they shot and killed Gilbert Flores:

```
10      Q.  -- doesn't make a move towards you, doesn't
11   make a move towards Mr. -- Deputy Vasquez, doesn't move
12   his hands in any manner, doesn't move his feet in any
13   manner, is not moving towards the house and is not
14   moving towards the car, and he has his hands above his
15   head, just because he's holding a knife and you and
16   Deputy Vasquez are more than 20 feet away, is it your
17   testimony, sir, that you could legally and
18   Constitutionally shoot and kill him in conformance with
19   Bexar County policy?
20      A.  Well, if you're referring to Mr. Flores, he was
21   moving.  He was a threat.  He was making movements.
```

(Ex. C – Deputy Sanchez Depo P.36 Lines 10-21).

Deputy Sanchez testified and alleged in his deposition that even though a picture might show Gilbert Flores is standing still and not moving that is not what was really happening in real life and that he was not standing still, he was moving up and down.  (**Ex. C** – Deputy Sanchez deposition testimony P.180 Lines 3-10):

```
3        Q.   "So even if he stands still and doesn't make a
4   move at all, but doesn't follow my commands, I'm going
5   to shoot him"?
6        A.   I -- I have to look at the whole thing, because
7   I can't just say that he's standing completely -- I
8   mean, in a picture he might be standing completely
9   still.  But in real life he's not standing still.  He's
10  moving.  He's going up and down.  He's --
```

Sanchez again states that no matter was what shown on the video or in a picture that "in real life" Flores was moving, he was looking around, he's looking in the car with his eyes and looking at the rifle.  (**Ex. C** – P.182 Lines 4-24.):

```
4        Q.   One of those things is standing still and just
5   not following your commands?
6        A.   I mean, I -- he was standing still because
7   of -- you know, but in real life he's not standing
8   still.  He's -- he's standing there -- still right
9   there.  But he's moving, he's looking around, he's
10  looking in the car with his eyes, looking at that rifle,
11  to me.
```

Bexar County Investigator John Perez (who is on the Defendants' witness list) also testified in his deposition that Flores is moving in the video.  (**Ex. D** – P.107 Line 16-P.108 Line 24).

Deputy Vasquez' statement given to the Sheriff's department states that:

> The male started advancing toward Deputy Sanchez and me—I would say the male was about six to eight feet away from us. Knowing the situation had kept escalating I believe it was the males' intent to kill me, I fired one round at the male. The male dropped the knife and fell to the ground (sidewalk area). I

This testimony and this statement raises the issue that the video does not capture what was occurring and allows the Defendants to argue that the video does not depict what was occurring. Thus, they raise the issue that the video doesn't speak for itself.

Further, the actions of the officers must be based upon objective facts, not the subjective thoughts or perceptions of the officers. This analysis confirms that the objective facts are Mr. Flores was not moving, not even in a subtle way, at the time he was shot. This is necessary to counter the Defendants arguments that they saw or believed he was.

### III.

### DEFENDANTS' CASE REFERENCES

The cases cited by Defendants are not analogous to the facts of this case or to Grant Fredericks' qualifications and credentials.

The primary case cited by Defendants is *Slack v. City of San Antonio*.  In this case the court limited the video expert to testifying about the process the expert used to enhance the audio and video.  The court's ruling hinged on the fact that the video expert, Digvijay Tanwar, held no specialized training or experience to interpret the video and therefore, his testimony was not better suited than a juror or lay person so it would not aid the trier of fact.  *Slack v. City of San Antonio*, 2021 WL 1390428 *3-4 (San Antonio 2021). The video expert in the *Slack* case has expertise in computer graphics, animation, video and virtual reality application.  He spent twelve years creating animations and working with videos and graphics for litigation.  (Ex. B – Rimkus info card for Digvijay Tanwar).

Grant Fredericks' expertise, training and experience is vastly different than the expert in the *Slack* case.  Mr. Fredericks has over twenty years of experience, training and expertise in

forensic video analysis as was detailed above and can be seen in Mr. Fredericks' CV (Exhibit A). Mr. Fredericks has the exact type of background, training and experience that would aid the jury and trier of fact in interpreting the video and the actions of Gilbert Flores the moments before and at the time of the shooting of Gilbert Flores.  The video was shot by a neighbor across the street through the neighbors' window on his cell phone.  Plaintiffs contend that the video depicts that Gilbert Flores was stationary, motionless with feet and hands not moving at the time the deputies decided to use deadly force and shot and killed Gilbert Flores. As stated, the Defendants contend otherwise.

The next case cited by Defendants is *Lee v. Andersen*.  In the *Lee* case, the video expert, Richard Dierks, enhanced the contrast of the video images from a surveillance camera to determine whether the Defendant had a gun in his hand.  *Lee v. Andersen*, 616 F.3d 803, 807-808 (8th Cir. 2010). Lee basically clarified seven individual images for his analysis.  *Id*.  When Dierks was asked what methods and principles he used to interpret images, Dierks replied that the first method is "simple observation."  *Id*. at 808.  The District Court found that based on his observation of the video - Dierks did not employ any technique or utilize any specialized skill that is unavailable to the jury, which was affirmed by the Eighth Circuit.  *Id*. at 808-809.  When asked what specialized knowledge he had to assist the jury in deciding what the clarified images show, Dierks responded, "I believe that a reasonable person looking at the clarified photograph and looking at Fong Lee's hand would conclude that his hand does not have a firearm in it."  *Id*.  Although Dierks testified that his experience and training allow him to look at an image more critically than a lay person, the jury was entirely capable of analyzing the images and determining whether Fong Lee had anything in his hands.  *Id*.

Grant Fredericks used numerous forensic video techniques in analyzing the cell phone videos in this case.  During the examination of the video in this case, careful consideration was given to technical variables that can introduce errors into the image, and that could result in the misinterpretation of the images by an untrained observer of compressed video images.  Some of the variables that require accurate interpretation include:

• Artificial edge patterns that may affect the shape of objects

• Temporal shift in object positioning due to encoding

• Spatial Encoding

• Temporal Encoding

• Motion blur caused by speed of movement

• Macroblock Analysis

• Motion Vector tracking and movement analysis

• Pixel tracking

• 'X', 'Y', coordinate identification to assess location, shape and size of objects

Grant Fredericks used the science and technology in the forensic video field to analyze and interpret the video evidence in this case. Mr. Fredericks uses motion vector analysis and analyzes the video at the pixel level in order to interpret what is occurring in the video. In addition to Mr. Fredericks' expert report, Mr. Fredericks produced a camera perspective analysis, motion vector analysis and a 92 page frame by frame pdf document with shooting event analysis with detailed analysis. The analysis further shows the exact moment of the shooting which is not readily apparent by just viewing the video itself. Grant Fredericks clearly utilized his vast training, experience and education in forensic video analysis and utilized his expertise in motion vector analysis and pixel interpretation to make his analysis and conclusions in this matter. Mr. Fredericks' experience and training in forensic video analysis would aid the jury in understanding what is actually depicted in the video and Mr. Fredericks will testify as to the detailed process and analysis he used to come to those conclusions. Mr. Fredericks background, training and experience, and his trial testimony, is vastly different than the expert in the Lee case that ultimately enhanced seven images and states that his basic observation is what skills he utilized in interpreting the images in the *Lee* case.

Next the Defendants cite the *Dunlap v. Hood* case which is also not analogous to the facts of this case. In the *Dunlap* case, the entire case revolved around whether Defendant took Plaintiff

out of the holding cell and threw him to the ground.  *Dunlap v. Hood*, 2009 WL  362292 *1 (N.D. Texas – Dallas 2009).  The video in Dunlap did not capture Plaintiff's removal from the cell, which is the key issue in the *Dunlap* case.  The Court stated:

> It is undisputed that the surveillance video did not capture plaintiff's removal from the holding cell or his initial contact with the ground. Instead, the video shows defendant standing next to a holding cell looking at a detainee, presumably plaintiff, who is inside the cell. An unidentified officer is seen nearby looking in the general direction of the holding cell. The next sequence, taken six seconds later, depicts two officers bending over, possibly observing someone on the ground. The only clear images of plaintiff are contained in a five-second sequence showing him lying face-down with his hands cuffed behind his back and surrounded by as many as four officers.

*Id*. at *1.

> The Court in *Dunlap* ultimately ruled that based on his "elemental analysis" of the surveillance video, Dickey concludes that at least two officers participated in extracting plaintiff from the holding cell. However, Dickey reached that conclusion just by looking at the images taken from the surveillance video, unaided by any specialized knowledge or experience. Because Dickey is no better suited than the jury to interpret the contents of the video, his supplemental opinion is not the proper subject of expert testimony.

*Id.* at *1.

Again, the facts of the Dunlap case are not similar to the facts that are before the court in this case.  Here, there is video evidence of the moments before and at the time the Deputies decided to use deadly force and shot and killed Gilbert Flores.  The Plaintiffs contend that the video shows Gilbert Flores was motionless, stationary and in surrender with his hands raised above his head at the time of the shooting.  The Defendant deputies, Bexar County Investigator John Perez and Defendants' expert witness, Albert Rodriguez, contend that the video does not show everything that was happening at the time the Deputies shot and killed Gilbert Flores and that Flores was actually advancing and was moving at the time the Deputies shot and killed Gilbert Flores.

11

Grant Fredericks was hired to review the video, analyze the video, use his vast knowledge, training and experience in forensic video analysis to analyze every frame of the video and produce various documents and a 92 page frame by frame pdf document which depict every moment of the video and what was occurring before and at the time the Deputies shot and killed Gilbert Flores. Grant Fredericks concluded that at the time the Deputies shot and killed Gilbert Flores he was standing still, motionless, stationary, not advancing with his hands above his head motionless.  Mr. Fredericks experience and training will aid the jury in determining what is seen in the video frame by frame and what techniques Mr. Fredericks used in making these determinations and conclusions.  This is vital testimony and evidence in that it directly contradicts Defendants' testimony and claims that Gilbert Flores was moving at the time they shot and killed him and that is why they perceived that he was an imminent threat.

The background, training and experience and extremely technical processes and analysis of the video of Grant Fredericks is highly different than the experts cited in the cases by Defendants. Those cases are not analogous to the facts and issues in this case and Plaintiffs would respectfully ask the Court to deny Defendants' late-filed Supplemental *Motion in Limine*.

Mr. Fredericks will be testifying live on Tuesday March 22, 2022.  Should the court have concerns, the court will be able to question Mr. Fredericks regarding his background, credentials, process of analysis, testimony or any other questions the court may have regarding Mr. Fredericks' testimony and background before his testifies on March 22, 2022.

Finally, due to scheduling conflicts and the unavailability of Mr. Fredricks later in the week, his testimony will be prior to the Deputies' testimony. In the event the Court grants this motion the jury would be left with the Deputies' contention that the video does not capture

movements by Mr. Flores and the Plaintiffs would be prejudged by not being able to counter this testimony through Mr. Frederick's analysis.

**PRAYER**

WHEREFORE, premises considered, Plaintiffs respectfully requests that this Court deny Defendants' Supplemental *Motion in Limine* and Trial Brief regarding Plaintiffs' Expert Grant Fredericks and ask for any and all such further relief to which Plaintiffs show themselves justly entitled.

Respectfully Submitted,

LAW OFFICES OF THOMAS J. HENRY
521 Starr Street
Corpus Christi, Texas 78401
Phone: (361)-985-0600
Fax: (361)-985-0601

By: _____
    Thomas J. Henry
    State Bar No. 09484210
    tjhenry@thomasjhenrylaw.com
    Robert P. Wilson
    State Bar No. 2178575
    rwilson-svc@thomasjhenrylaw.com
    Roger L. Turk
    SBN: 00788561
    Rturk-svc@thomasjhenrylaw.com
    Richard W. Hunnicutt III
    SBN : 10279700
    Rhunnicutt-svc@thomasjhenrylaw.com

ATTORNEYS FOR PLAINTIFFS

## <u>CERTIFICATE OF SERVICE</u>

I do hereby certify that on the 20th day of March 2022  a true and correct copy of the

above was served on the following via ECF filing:

Charles Frigerio
Law Offices of Charles S. Frigerio
A Professional Corporation
111 Soledad, Suite 840
San Antonio, Texas 78205

_____

Robert P. Wilson